IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **Dr. William Thompson,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION NO. 1:10-246-KD-B |
| | ) | |
| **Bishop State Community College,** *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This matter is before the Court on Defendants' "Motion for Summary Judgment" and supporting documents (Docs. 25-27) and Plaintiff's Response and supporting documents (Docs. 42-43, 44-1). For the reasons set forth herein, the Court finds that Defendants' motion for summary judgment is due to be **GRANTED**.

**I.      Background**

On May 11, 2010, Plaintiff Dr. William Thompson ("Plaintiff") initiated this action for alleged racially discriminatory treatment in his failure to receive a promotion, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981, against Defendants Bishop State Community College, the Alabama Department of Post-Secondary Education, and the State of Alabama ("Defendants"). (Doc. 1). Plaintiff had timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission, received a "Right to Sue" letter, and filed his complaint within 90 days of receiving the letter. (Id. at 1-2). Defendants have moved for summary judgment as to all claims. (Doc. 25).

**II.     Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R.

1

Civ. P. 56(a) (Dec. 2010). The recently amended Rule 56(c) governs procedures and provides as follows:

> *(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> *(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> *(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.
>
> *(4) Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c) (Dec. 2010).

Defendants, as the parties seeking summary judgment, bear the initial responsibility of informing the district court of the basis for their motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which they believe demonstrate the absence of a genuine issue of material fact. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, the moving parties are entitled to summary judgment. Celotex, 477 U.S. at 323. In reviewing whether the

nonmoving party has met his burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992), cert. denied, 507 U.S. 911 (1993) (internal citations and quotations omitted). The mere existence of a factual dispute will not automatically necessitate denial; rather, only factual disputes that are material preclude entry of summary judgment. Lofton v. Sec'y of Dep't of Children & Family Servs., 358 F.3d 804, 809 (11th Cir. 2004), cert. denied, 534 U.S. 1081 (2005).

## III.   Facts[1]

Bishop State Community College ("Bishop State"), located in Mobile, Alabama, is a member of the Alabama College System, the state-supported network of two-year community, junior, and technical colleges serving residents of Alabama. Presently, it hosts approximately 3,800 students and employs approximately 370 people. Its current president, Dr. James Lowe ("Lowe"), joined the college as its Interim President in July 2007 and was appointed President of the College in May 2008.

Bishop State was experiencing a number of problems at the time Lowe became its Interim President. First, the college had been placed on probation by its accrediting agency, accreditation being necessary for its continued ability to operate. Second, the U.S. Department of Education had placed Bishop State on heightened cash monitoring due to financial aid improprieties, which involved over twenty college employees being subject to arrest and

---

[1] The Court has made its determination of facts by "review[ing] the record, and all its inferences, in the light most favorable to [Plaintiff,] the nonmoving party." Benson v. Tocco, Inc., 113 F.3d 1203, 1207 (11th Cir. 1997).

criminal charges. Moreover, the college owes the U.S. Department of Education $2.7 million for improper financial aid grants. In addition, since 2008, Bishop State's allocation from the Alabama Education Trust Fund has been cut by approximately $4 million, a 22% reduction. As a result, Bishop State's operations and maintenance budget has shown a deficit each year since 2008.

The Alabama Department of Postsecondary Education requires that each community college maintain a reserve fund of at least two months of a college's operation and maintenance expenses. At one point in time, Bishop State's operations bank account contained less than 10% of this required amount. On two occasions, Lowe found it necessary to obtain loans in order to make payroll for the college's employees. Budgetary constraints persist at Bishop State to this day.

Lowe's appointment as Interim President in July 2007 was in conjunction with then-Chancellor Bradley Byrne's appointment of the Project Phoenix Team, a group comprised of individuals from other Alabama colleges with expertise in various areas of college operations who were charged with evaluating and assessing Bishop State's operations and programs and with making recommendations for solving problems. Led by Lowe, the Project Phoenix Team remained at Bishop State for approximately a year. The members of the Project Phoenix Team were not employees of Bishop State, held no official title at the college, and were compensated by their respective employers rather than Bishop State.

Bishop State's instructional operations are separated into divisions. These divisions include those involved in traditional general education, such as humanities, social sciences, math and science, education, business and economics; those involved in technical training; and those involved in granting degrees or certifications in health-related professions. The Alabama

4

Department of Postsecondary Education grants college presidents authority to appoint division chairs who are charged with performing additional duties for their divisions. Division chairs each receive a monthly stipend of $400. Chair positions at Bishop State are at-will assignments. Among other required qualifications, a candidate for division chair must have a Master's degree from an accredited institution, with a minimum of eighteen graduate semester hours in a field of study covered by the division.

When Lowe arrived at Bishop State, all divisions, with the exception of the divisions of education and of health-related programs ("HRP division"), had serving division chairs. The humanities and social science divisions are two of the largest divisions at Bishop State, in terms of both number of students and number of instructors. When Lowe began at Bishop State, Dr. Keflyn Reed was serving as chair of the division of humanities, and Dr. Alalazu Ugoji was serving as chair of the division of social sciences. Dr. Ugoji resigned following the summer semester of 2008, and Dr. Reed was appointed Interim Associate Academic Dean in the spring of 2009, leaving both chair positions vacant. After consulting with the outgoing chairs and various instructors of both divisions, Lowe chose to appoint Diana McNeil as interim chair of the humanities division and Malvareen Harris as interim chair of the social sciences division. Both candidates are African-American, and both met the required education qualifications for division chair. Currently, only one of Bishop State's division chairs is a white person.

Plaintiff, a white male, has been employed at Bishop State since 1988 and serves in the Funeral Services Education program as its director and instructor. Funeral Services Education is one of five programs comprising the college's HRP division. Plaintiff holds a Bachelor of Science degree in psychology and a master's degree in counseling and human development from Troy State University, and a doctor of education degree in curriculum and instruction from the

5

University of West Florida. Beginning in the fall of 2007, Plaintiff made multiple requests to Lowe to be appointed chair of the HRP division. Though this position had been filled from time to time in the past, Plaintiff was informed that Bishop State was not looking to appoint, nor was it searching for, anyone to fill the position when Plaintiff made his requests. The position remains unfilled.

**IV.    Analysis**

Plaintiff has alleged discriminatory failure to promote under both Title VII and 42 U.S.C. § 1981. (Doc. 1). "A claim under 42 U.S.C. § 1981 requires intentional race discrimination[;]" therefore, the test to determine the validity of such a claim is "'the same as the formulation used in Title VII discriminatory treatment cases.'" Greer v. Birmingham Beverage Co., 291 Fed. Appx. 943, 945 (11th Cir. 2008) (quoting Brown v. Am. Honda Motor Co., Inc., 939 F.2d 946, 949 (11th Cir. 1991)).

A plaintiff may prove a claim of intentional discrimination through direct evidence, circumstantial evidence, or through statistical proof. See, e.g., Burke-Fowler v. Orange County, Fla., 447 F.3d 1319, 1322-1323 (11th Cir. 2006); Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990). No statistical evidence has been presented in this case. Indeed, in his motion to dismiss paragraph nine of his Complaint, Plaintiff expressly indicated that he did not intend to conduct statistical analysis. (Doc. 34 at 1). Direct evidence of discrimination is defined as "evidence which reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee. Only the most blatant remarks, whose intent could be nothing other than to discriminate . . . constitute direct evidence of discrimination." Van Voorhis v. Hillsborough Cnty. Bd. of Cnty. Comm'rs, 512 F.3d 1296, 1300 (11th Cir. 2008) (internal citations and quotations omitted). Plaintiff alleges no direct evidence

of discrimination. Therefore, Plaintiff must rely on circumstantial evidence to show discrimination in this case.

Where a plaintiff relies on circumstantial evidence of discrimination, courts evaluate whether summary judgment is appropriate using the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981). Under the McDonnell Douglas framework, a plaintiff must show an inference of discriminatory intent and therefore carries an initial burden of establishing a *prima facie* case of discrimination. Id. at 802. Presenting a *prima facie* case requires that the plaintiff establish facts adequate to permit an inference of discrimination. Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). The successful assertion of a *prima facie* case then "creates a rebuttable presumption that the employer unlawfully discriminated against" the plaintiff. E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1272 (11th Cir. 2002). The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the employment action. Id. See, e.g., Holifield, 115 F.3d at 1564. A defendant must only identify a nondiscriminatory basis, not prove it. Coutu v. Martin Cnty. Bd. of Cnty. Comm'rs, 47 F.3d 1068, 1073 (11th Cir. 1995). In the last step of the burden-shifting analysis, if the employer meets "its burden of production, the presumption of discrimination is rebutted, and the inquiry 'proceeds to a new level of specificity,' in which the plaintiff must show that the proffered reason really is a pretext for unlawful discrimination." Joe's Stone Crabs, 296 F.3d at 1272-1273. See also Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997). On establishing pretext, the Eleventh Circuit has held that

> [a] plaintiff can satisfy her burden of showing pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Burdine, 450 U.S. at 256, 101 S. Ct. 1089. There must be sufficient evidence to allow a reasonable

7

fact-finder to conclude that the employer's articulated reasons are not believable. Jackson v. State of Ala. State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005). This can be accomplished by pointing to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the proffered explanation. Id. The plaintiff must present significant and probative evidence of pretext in order to avoid summary judgment. Mayfield v. Patterson Pump Co., 101 F.3d 1371, 1376 (11th Cir.1996).

This court has explained that if the proffered reason was legitimate and nondiscriminatory, then the plaintiff must "'meet [the proffered] reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason.'" Brooks v. County Comm'n of Jefferson County, Ala., 446 F.3d 1160, 1163 (11th Cir. 2006) (quoting Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000)). This court has further explained that "[a] reason is not pretext for discrimination 'unless it is shown both that the reason was false, and that discrimination was the real reason.'" Id. (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993) (emphasis in original)).

Davis-Dietz v. Sears, Roebuck and Co., 284 Fed. Appx. 626, 630 (11th Cir. 2008).

As stated, Plaintiff must initially establish a *prima facie* case. To establish the elements of a *prima facie* case of discriminatory failure to promote under McDonell Douglas, the plaintiff must show that: 1) he is a member of a protected class under Title VII; 2) he sought and was qualified for a position that the defendant employer was attempting to fill; 3) he was rejected by the defendant despite his qualifications; and 4) after his rejection, the defendant either continued to attempt to fill the position or in fact filled the position with a person outside the plaintiff's protected class. See Harrington v. Disney Reg'l Entm't, Inc., 276 Fed. Appx. 863, 872 (11th Cir. 2007) (citing Crawford v. W. Electric Co., Inc., 614 F.2d 1300, 1315 (5th Cir. 1980)).

The Plaintiff cannot establish a *prima facie* case because he is unable to establish either the second or the fourth element. As to the second element, there is no evidence that Bishop State is seeking or sought to fill the position. As to the fourth element, Plaintiff argues that the recent appointments of Diana McNeil and Malvareen Harris, both African-American, as interim chairs of their respective divisions (humanities and social sciences) satisfies his burden. However, neither McNeil nor Harris was appointed to the position that Plaintiff seeks, i.e., chair

of the HRP division. Moreover, Plaintiff does not claim to be qualified for either chair position for which McNeil and Harris were appointed. Thus, McNeil and Harris are not relevant to the inquiry. Accordingly, Plaintiff is unable to carry his burden to establish a *prima facie* case.

## V.     Conclusion

For the reasons set forth herein, summary judgment is **GRANTED** in favor of Defendants on all claims, and this case is dismissed with prejudice.

**DONE** and **ORDERED** this the **15th** day of **April, 2011**.

    /s/ Kristi K. DuBose
**KRISTI K. DUBOSE**
**UNITED STATES DISTRICT JUDGE**